UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| BEULAH PREWITT, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:20-CV-27-REW-HAI |
| | ) | |
| v. | ) | OPINION & ORDER |
| | ) | |
| GERBER LIFE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court weighs alleged violations of a Kentucky insurance statute and fraud with respect to children's whole life insurance policies. Plaintiff Beulah Prewitt purchased, through the years, three children's whole life insurance policies from Defendant Gerber Life Insurance Company (Gerber Life). Prewitt, targeting the policies, now seeks to hold Gerber Life liable for violating Kentucky's fair-advertising insurance statutes (by way of Kentucky's negligence per se statute) and for committing common-law fraud in the inducement. Defendant has moved to dismiss the Amended Complaint in its entirety. DE 27. Prewitt responded and Defendant replied. DE 32 (Response); DE 42 (Reply). Defendant requests oral argument. DE 27 at 1. The Court **DENIES** the hearing request and considers the motion fully briefed and ripe for review. For the reasons discussed below, Prewitt's Amended Complaint, among other deficiencies, fails to properly state an actionable claim, necessitating dismissal. The Court thus **GRANTS** DE 27.

1

I.      **BACKGROUND**[1]

In 1967, Gerber Products Company, a company not party to this suit, began selling life insurance products under the name Gerber Life Insurance Company. DE 23 at ¶ 8. In September 2018, Gerber Products' parent company sold Gerber Life to Western & Southern Financial Group, also not party to this suit. *Id.* Gerber Products licenses its trademark to Gerber Life.[2] *Id.*

Gerber Life sells a variety of financial products. *Id.* at ¶ 9. One such product is the Gerber Life Grow-Up Plan, which the company markets as an opportunity for adults of young children to provide a "head start" to their financial well-being with policies that grow cash value over time. *Id.* at ¶ 10. As the Amended Complaint describes, the policy is "not a savings plan; it is actually a life insurance policy." *Id.* at ¶ 11.

Sometime before February 2007,[3] Prewitt saw advertising for a Gerber Life product. In February 2007, she applied for whole life insurance for one of her grandchildren. *Id.* at ¶ 41. She bought additional policies for her other grandchildren in 2013 and 2016. *Id.* Each policy was a Grow-Up Plan offering. Prewitt points to three advertisements, all dated in 2019, that she claims are "like" the advertisements that induced her to purchase the particular Gerber Life products. *Id.* at ¶ 30, 31, 36, 42. She also generally references Facebook messages and mailings from Gerber, which contributed in some way to her decisions. *Id.* at 42-43.

---

[1] The Court, as it must in the Rule 12 context, largely takes these allegations from the Amended Complaint. *See Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996) ("We must treat as true all of the well-pleaded allegations of the *complaint*." (emphasis added)); *see also* DE 23 (Amended Complaint).

[2] As the Amended Complaint states "this Complaint does not concern the Gerber Products Company's iconic baby food, whose quality Plaintiff has no reason to doubt." DE 23 at ¶ 1.

[3] Prewitt does not allege when she first became aware of Gerber Life's products, nor does she allege when she first (in fact ever, specifically) saw a Gerber Life advertisement. The Amended Complaint is bereft of most temporal details.

Prewitt filed suit against Gerber Life in Laurel County Circuit Court on January 6, 2020. DE 1-1. Gerber Life removed the complaint on February 3, 2020. DE 1. Prewitt filed an Amended Complaint on March 11, 2020. DE 23. Prewitt's Amended Complaint alleges, for herself and the putative class, two claims: a statutory claim under KRS 446.070 for violation of Kentucky's unfair or deceptive insurance practices statutes and a common law claim for fraud in the inducement. *Id.* She centers these claims on advertisements for two Gerber Life Insurance products: the "Gerber Life Grow-Up Plan" and the "Gerber Life College Plan." *Id.* at ¶ 2.[4] Gerber Life moves, pursuant to Rule 12(b)(6), to dismiss the complaint in its entirety. DE 27.

The Court, noting that the pleading at issue is Prewitt's second go at a complaint, stakes out some core observations about the record and the chronology:

First, the Court will assess the precise language presented. The post-purchase e-mail ads Prewitt tenders, all from 2019, are quoted or duplicated in ¶¶ 30, 31, and 36. Those ads unequivocally and repeatedly describe the product advertised as "whole life insurance," which includes as a feature that it "builds cash value." The ads use the metaphor "nest egg" and tout other components of the policy—the unvarying premium, the permanency of coverage, and an automatic doubling of coverage when the child reaches maturity. The Facebook and mailing content alleges similar statements, regarding the cash value feature. The latter two media are so non-specific and general, as to circumstances, timing, and content, that they make a full analysis nearly impossible.

Second, Plaintiff, the case pursuer, asks the Court to navigate a challenging chronology. Prewitt made purchases in 2007, 2013, and 2016. DE 23 at ¶ 41. She provides nary a date relating to the Gerber advertisements and any purchasing decision. Thus, Plaintiff forwards 2019 ad content as exemplifying ("like") what she saw pre-purchase. As vague as that idea is, Prewitt

---

[4] Plaintiff is not a policyholder under the Gerber Life College Plan.

purchased not once but thrice. She bought and held policy 1; she then, years later, bought and held policy 2, then, more years hence, bought policy 3. Is she claiming that one ad cluster from prior to 2007 led to all three decisions to buy? Is she claiming that she saw and relied on homogeneous ads sprinkled over the full period? The Amended Complaint does not reveal, with any precision, what ad at what point prompted what policy choice. Further, Prewitt had policy 1 before buying 2 and held 1 and 2 before buying 3. The Court, nay logic, cannot ignore Prewitt's fund of information, evident over time, in judging the Amended Complaint.

## II.   STANDARD

### a.   Rule 12(b)(6)

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a formulaic recitation of a cause of action's elements will not do." *Twombly*, 127 S. Ct. at 1965. Courts "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Yet, courts need not accept "legal conclusion[s] couched as [] factual allegation[s]." *Papasan v. Allain*, 106 S. Ct. 2932, 2944 (1986).

Generally, "matters outside of the pleadings are not to be considered by a court in ruling on a . . . motion to dismiss." *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). However, the Court may "consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Ashland, Inc. v. Oppenheimer & Co.*, 648

F.3d 461, 467 (6th Cir. 2011) (internal quotation marks and citation omitted). The Court may also consider "exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

Hinging on Rule 8's minimal standards, *Twombly* and *Iqbal* require a plaintiff to "plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). Where plaintiffs state "simply, concisely, and directly events that . . . entitle[] them to damages," the rules require "no more to stave off threshold dismissal for want of an adequate statement." *Id.*; *El-Hallani v. Huntington Nat. Bank*, 623 F. App'x 730, 739 (6th Cir. 2015) ("Although *Twombly* and *Iqbal* have raised the bar for pleading, it is still low.).

## III.   ANALYSIS

### a.   Preliminary Matters

Defendant argues three preliminary matters that attempt to narrow the field: 1) many of Prewitt's claims are barred by the requisite statute of limitations, 2) Prewitt does not have standing to challenge or make a claim regarding the College Plan, and 3) Prewitt's statutory claim fails for lack of a recognized private right of action. The Court examines each threshold argument, in turn.

#### i.   Statute of Limitations

To determine whether any claims are time barred, the Court first asks when the claims accrued. Per KRS 413.130, a fraud claim does not accrue "until the discovery of the fraud or mistake." *See Bowden v. City of Franklin, Kentucky*, 13 F. App'x 266, 274 (6th Cir. 2001) ("[T]he Court must look to state law to determine when the claim for relief accrues when that claim is before a federal court on diversity or supplemental jurisdiction."). More specifically, "a cause of

action accrues, and the limitations period begins to run, when 'the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct.'" *Cantrell v. Ashland Oil, Inc.*, Nos. 2006-SC-000763-DG, 2007-SC000818-DG, 2010 WL 1006391, at *10 (Ky. Mar. 18, 2010) (quoting *Louisville Tr. Co. v. Johns-Manville Prods. Corp.*, 580 S.W.2d 497, 501 (Ky. 1979)); *see also Daugherty v. American Express Co.*, 2010 WL 4683758, *7 (W.D. Ky. Nov. 12, 2010) (noting, in a Kentucky misrepresentation of insurance claim, that discovery of injury should have occurred "at the time [plaintiff] received the Plan documents which contained the definitions and terms of the policy").

Turning to particular limitations, three are applicable. First, the limitation for a claim under KRS 446.070 is five years. KRS 413.120(2) ("The following actions shall be commenced within five (5) years after the cause of action accrued: . . . An action upon a liability created by statute, when no other time is fixed by the statute creating the liability."). Second, the limitation for a Kentucky fraud claim is five years. KRS 413.120(11) ("An action for relief or damages on the ground of fraud or mistake."). Finally, the statute of repose for a Kentucky fraud claim is ten years. KRS 413.130(3) ("In an action for relief or damages for fraud or mistake . . . the action shall be commenced within ten (10) years after the time of making the contract or the perpetration of the fraud"). Defendant claims that the statute of repose bars any claim on the 2007 policy, and that the statute of limitations blocks any claim on the 2013 policy. DE 27 at 19–20. Plaintiff filed her suit in Laurel Circuit Court on January 6, 2019. *See* DE 1-1. Plaintiff essentially concedes that Defendant's postural description "is generally true," but argues that Defendant's continued fraudulent advertisements constitute equitable tolling or, curiously, equitable estoppel. DE 32 at 28–29.

The Court looks to the Amended Complaint to resolve the dispute. Prewitt "purchased the first policy in March 2007[,]" "bought a second policy in September 2013[,]" and "[i]n December 2016, she bought a third policy[.]" DE 23 at ¶ 41. The statute of repose would clearly apply to all actions taken by Gerber before January 6, 2009. For the remaining claims, Prewitt does not allege precisely when she received the policies.[5] Because the Amended Complaint alleges no facts that would place her claims outside the statute of limitations and because none of the documents definitively resolves *when* Prewitt received the policies, ruling on the statute of limitations is premature in the 12(b)(6) context. *See Pike Cty. Fiscal Court v. RCC Big Shoal, LLC*, No. 7:20-CV-75-REW, 2020 WL 6937444, at *4 (E.D. Ky. Nov. 24, 2020) ("Nothing in the pleading hints at discovery of any alleged misrepresentations more than five years before Plaintiffs filed suit."). The policy 1 claim stands barred. The same fate is likely as to policy 2.[6] The claims on the third policy are timely. Because of the procedural posture, the Court does not dismiss the full Amended Complaint (insofar as it addresses policy 2 and/or 3) on the basis of limitations.

    **ii.**  Standing

Gerber Life argues that Prewitt does not have standing to pursue any claims against it founded on the Gerber Life College Plan. DE 27 at 13, 18. Specifically, "Prewitt's statutory and common law claims fail because she has not alleged she suffered any injury stemming from Gerber

---

[5] She does state, in a separate context, that she received the policies "*after* she signed them." DE 32 at 22 (emphasis in original). She does not, however, provide a date certain in this context either. She does not contest that she did timely receive each policy; the Court presumes receipt a reasonable mailing interval after issuance.

[6] Certainly, Plaintiff would have the burden on an avoidance theory like equitable tolling. *See Moorman v. Commonwealth*, 484 S.W.3d 751, 757 (Ky. 2016) (noting that "a litigant seeking equitable tolling bears the burden of establishing" the elements). Simply relying on the facts of the claim is inadequate to demonstrate the elements, particularly where Prewitt did receive each policy, but the Court does not resolve the timeliness on policy 2. Given that the policy 3 basis survives the limitations test, the Court elects against running the argument to the ground in this context.

Life's alleged misrepresentations regarding the Gerber Life College Plan." *Id.* at 18. Prewitt claims that her allegations are sufficient to sustain the claim on the Gerber Life College Plan because it is too early to determine whether she is an adequate representative for the putative class. DE 32 at 26. Prewitt claims that, even if it were not too early, she should still be allowed to maintain the claim on behalf of the putative class because "the same misconduct . . . applies to both" plans. *Id.*

To satisfy the standing requirements of Article III of the Constitution, plaintiffs must meet three requirements. First, plaintiffs must demonstrate that they have suffered "an 'injury in fact' that is both concrete and particularized and actual or imminent." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 120 S. Ct. 693, 704 (2000) (citing *Lujan v. Defenders of Wildlife*, 112 S. Ct. 2130, 2136 (1992)). Second, the injury must be "fairly traceable to the challenged action of the defendant[.]" *Id.* Finally, plaintiffs must show that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.*

"The Article III standing requirements apply equally to class actions. The class representative must allege an individual, personal injury in order to seek relief on behalf of himself or any other member of the class." *Sutton v. St. Jude Medical S.C., Inc.*, 419 F.3d 568, 570 (6th Cir. 2005) (citing *O'Shea v. Littleton*, 94 S. Ct. 669, 675 (1974)). "That a suit *may* be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that *they personally* have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. Eastern Ky. Welfare Rts. Org.*, 96 S. Ct. 1917, 1925 n.20 (1976) (emphasis added) (quoting *Warth v. Seldin*, 95 S. Ct. 2197, 2207 (1975) (emphasis added)). Prewitt's claims targeting the Gerber Life College Plan do not survive the Rule 12 hurdle because she makes no

allegation that she even purchased, let alone suffered a harm based upon, that product. In her haste to plate a class entree sampling both plans, Prewitt has only alleged one flavor of actual injury.

Nor is the conduct alleged the same. The plans are different, as is the cited marketing pertaining to the plans. Plaintiff is a stranger to the College Plan; she relied on no advertising, made no decision to subscribe, and has utterly no harm from any alleged relevant action by Gerber Life. She has no more basis to make the claim than a random person on the street. Although the Amended Complaint suggests a personal stake, its factual allegations fail to state a claim under the College Plan. The Court agrees with Gerber Life and thus dismisses that part of the Amended Complaint.

### iii. Private Cause of Action

Finally, Defendant denies the existence of a private right of action under Kentucky's KRS 446.070 rubric. DE 27 at 20–22. The Court agrees with Prewitt: Per the cases, KRS 446.070 provides a private remedy for a violation of KRS 304.12-010 and KRS 304.12-020. *See State Farm Mut. Auto. Ins. Co. v. Reeder*, 763 S.W.2d 116, 117 (Ky. 1988) (holding that the Kentucky insurance statutes do not preclude a private right of action under KRS 446.070); *Int'l Res., Inc. v. New York Life Ins. Co.*, 950 F.2d 294, 300 (6th Cir. 1991) (noting that, in analyzing whether ERISA supersedes KRS 446.070, "[t]he remedy for violation of [KRS § 304.12-010, 020] is created by KRS § 446.070"); *Cook v. State Farm Mut. Auto. Ins. Co.*, No. 2002-CA-000801-MR, 2004 WL 2011375, at *6 (Ky. Ct. App. Sept 10, 2004) (holding that, despite KRS 304.12-010's status as "an introductory section to Subtitle 12 of the Insurance Code," plaintiff regardless had a proper cause of action under KRS 304.12-020 because "[t]he remedy for violation of KRS 304.12-020 is created by KRS 446.070"); *Helton v. Am. Gen. Life Ins. Co.*, 946 F.Supp.2d 695, 703–04 (W.D. Ky. 2013) (analyzing a KRS 304.12-020 claim under KRS 446.070 through the lens of negligence per se).

9

Gerber Life demurs by criticizing the cases, but on this matter of Kentucky law, validated by the Sixth Circuit, this Court will toe the established line.

With these preliminary matters resolved, the Court turns to both Amended Complaint claims and examines the advertisements related to the Gerber Life Grow-Up Plan.

### b. Claim 1 – KRS 446.070

The parties disagree about the standards to be applied to Claim 1. Defendant argues that it should be evaluated part and parcel with Claim 2 and is simply a statutory claim for fraud. *See* DE 27 at 8. Prewitt argues that the claim is a "species of negligence" and should not be held to the same exacting standards, specifically the particularity requirement of Rule 9(b) *See* DE 32 at 6–8.

KRS 446.070 is simply the codification of a negligence per se claim. *Helton*, 946 F. Supp.2d at 704. Essentially, KRS 446.070 "is merely a negligence claim with a statutory standard of care substituted for the common law standard of care." *Real Est. Mktg., Inc. v. Franz*, 885 S.W.2d 921, 926-27 (Ky. 1994)). Thus, the elements needed to satisfy Claim 1 are duty (created and defined by KRS 304.12-010 and KRS 304.12-020), breach (by doing one of the acts described in KRS 304.12-010 and KRS 304.12-020), causation, and damages. The remedy, per the statute, extends in this way: "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation[.]" KRS 446.070.

Where the parties diverge is on the effect of the *type* of the negligence claim in the 12(b)(6) context. Defendant argues that because the statutory standard of care is one that "sounds in fraud," then the pleading must meet the rigorous gating of Rule 9(b).[7] *See* DE 42 at 2–3. Prewitt disagrees, stating that she "need only show that the advertisements be untrue, deceptive or misleading in fact, not that they are necessarily fraudulent." DE 32 at 7. Certainly, *Republic Bank & Tr. Co. v. Bear*

---

[7] Described *infra* Part III.c.

*Stearns & Co.*, 683 F.3d 239, 253 (6th Cir. 2012) indicates that the Rule 9(b) sweep can extend beyond titular fraud to actions sounding in or founded on fraudulent or duplicitous conduct. Per that case, Kentucky law (which controls) would bring within the purposes of Rule 9(b) an action resting on or requiring an "allegation of duplicity." *Id.* at 248. In *Republic Bank*, the analog was negligent misrepresentation. The Court sees little light between that concept, with only a negligence mens rea, and the "untrue, deceptive, or misleading" modifiers imported via KRS 446.070 and 304.12-020(4).

Nevertheless, the Court need not resolve this pleading standard feud because, as described below, even under a more relaxed standard, Plaintiff has failed to plausibly allege an "untrue, deceptive, or misleading" statement or other matter violative of the Kentucky insurance statutes. The content Prewitt describes as transgressing the Insurance Code simply is not a policy benefit misrepresentation, unfair misnomer, or representation that, fairly read, is untrue, deceptive, or misleading.[8] In this context, Prewitt's Amended Complaint has failed to adequately plead a statutory violation. Accordingly, the Court dismisses Claim 1 of the Amended Complaint.

### c.   Claim 2 – Fraud in the Inducement

A Kentucky fraud claim has six elements:

a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury.

---

[8] Prewitt spent little time on the underlying advertising regulation. The Court has carefully reviewed both the statute and 806 KAR 12:010, et seq., in evaluating whether Prewitt's claim crosses into the plausible. The "[w]ords, phrases, or illustrations" Prewitt complains of were not used in misleading ways as they accurately represented the whole life insurance Prewitt received. *See* 806 KAR 12:010-3(2). The disclosure of the product as whole life insurance was also "set out conspicuously and in close conjunction with the statements" Gerber made. *See* 806 KAR 12:010-5. Ultimately, because the statements and content from Gerber Life are accurate, suggest no underlying factual foundation that is untrue or misleading, and appear in the inarguable context of whole life insurance, the Court rejects the premise that Defendant engaged in any unfair or deceptive act or practice.

*United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999). Per Civil Rule 9(b), "a party must state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). "The Sixth Circuit interprets" Rule 9(b)'s heightened pleading requirement "as requiring plaintiffs to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (quotation marks omitted). The absence of assertions anchoring the purported misrepresentations to a discrete time and place dooms a fraud claim as pleaded. *United States ex rel. Roycroft v. Geo Grp., Inc.*, 722 F. App'x 404, 406 (6th Cir. 2018) ("Rule 9(b) requires a plaintiff to state with particularity the circumstances constituting fraud—i.e, the who, what, when, where, and how of the alleged fraud."); *CNH Am. LLC v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW)*, 645 F.3d 785, 795 (6th Cir. 2011) ("Nowhere in its complaint does it say when and where the [defendant] made an intentional misrepresentation about its purported authority to negotiate on behalf of the retirees."); *see also Republic Bank*, 683 F.3d at 253 ("Specifically, the plaintiff must: (1) point to a particular allegedly fraudulent statement; (2) identify who made the statement; (3) plead when and where the statement was made; and (4) explain what made the statement fraudulent. . . . Republic does no such thing. Nowhere does it indicate when, where, or to whom the alleged misstatement was made. This defect is fatal. The claim may not proceed because Republic's complaint does not pass muster under Rule 9(b)." (citation omitted)).

Defendant attacks (mostly) the second and fifth elements. First, Gerber Life claims that none of the advertisements or the complained of language Plaintiff points to are false material representations. *See* DE 27 at 9–11. Second, Defendant argues that Plaintiff has failed to meet the Rule 9(b) pleading standard by not pointing to which advertisements she specifically relied on. *Id.*

at 11– 13. The Court finds that Prewitt failed to adequately allege that Gerber Life made false material representations in the marketing, labeling or advertising at issue. The deficit is fatal to the fraud claim.[9]

Prewitt's main theory, under both claims, is that Gerber Life's advertisements deceptively hide the true purpose or operation of the Grow-Up Plan. Prewitt points to statements made in advertisements as effectuating the ruse. The plan "automatically builds cash value each time you make a payment, building a nest egg for your child's future. The longer you own the policy, the more cash value the policy accumulates." DE 23 at ¶ 30. Gerber Life touts the plan as a "nest egg that grows and grows[.]" *Id.* at ¶ 31. The policy "[b]uilds cash value – a nest egg that grows and grows[.]" *Id.* at ¶ 36. Prewitt also points to Facebook ads referring to the "nest egg" metaphor and

---

[9] The other particularity arguments are close calls. Prewitt argues that the Rule 9(b) requirements should be relaxed because she pleads a fraud scheme that encompasses a "common message" throughout Gerber's marketing materials and because Gerber has control over the specific advertisements that induced Prewitt. DE 32 at 8–14. The specificity requirements of Rule 9(b) "will be applied less stringently" in cases where discovery has yet to occur and where "the alleged fraud occurred over an extended period of time, is within the knowledge and control of [the defendant], and consisted of numerous acts[.]" *Whalen v. Stryker Corp.*, 783 F. Supp.2d 977, 982 (E.D. Ky. 2011) (citing *U.S. ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 509–10 (6th Cir. 2007). "Specifically, . . . the examples that a [plaintiff] provides will support more generalized allegations of fraud only to the extent that the [plaintiff's] examples are *representative samples* of the broader class of claims." *U.S. ex rel. Bledsoe*, 501 F.3d at 510 (emphasis in original). "[T]o satisfy Rule 9(b)'s particularity requirement [in this context] . . . [plaintiff] must provide *some* representative examples of their alleged fraudulent conduct, specifying the time, place, and content of their acts and the identity of the actors." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006). Prewitt does not say when she saw any advertisement and does not draw a specific link between an ad or ads and her decision to buy a particular product. This is especially problematic given the three temporally unrelated purchases. However, given the Court's treatment of the claims and the specific assertion that ads of like content led Prewitt to enroll, the Court will treat the Amended Complaint as adequate, barely, under Rule 9(b). The representative exemplars of Gerber advertisements and the limitations in the Amended Complaint identify the relevant (pre-purchase) time, place, content, and actors involved in the alleged fraud.  That Gerber would know its own (highly regulated) ad history is part of this calculus.

"builds cash value" description.  She complains of mailed literature depicting the policy as a "head start" for the child and a source of "ready cash" in the future.

Prewitt's theory follows that, by describing the policies as a "nest egg" that "grows and grows" and that "builds cash value," Gerber Life falsely described its whole life insurance product as an "investment vehicle" or a "savings vehicle[.]" DE 32 at 5. Prewitt claims this comparison is fraudulent because the plan, in fact, and relative to premiums paid compared to cash value, "operate[s] at a substantial loss[.]" DE 32 at 4.  Thus, by masquerading a life insurance policy as an advisable savings vehicle, Gerber Life materially misrepresented its investment structure and committed fraud. *Id.* The Court rejects this implausible argument at the 12(b)(6) stage.

"[A] misrepresentation to support an allegation of fraud must be made concerning a present or pre-existing fact, and not in respect to a promise to perform in the future." *Filbeck v. Coomer*, 182 S.W.2d 641, 643 (Ky. 1944). Kentucky has well-defined boundaries on what is and is not an actionable representation. The Supreme Court's *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 548–51 (Ky. 2009) provides the map. Thus,

> The misrepresentation, moreover, must relate to a past or present material fact. "A mere statement of opinion or prediction may not be the basis of an action." [*McHargue v. Fayette Coal & Feed Company*, 283 S.W.2d 170, 172 (Ky. 1955)]. This means, as the Court of Appeals held, that forward-looking opinions about investment prospects or future sales performance such as those involved in this case generally cannot be the basis for a fraud claim.

*Id.* at 549. A speaker making otherwise immune statements can still edge into fraud if he suggests (false) foundational facts behind the statement or describes what in fact is a complete sham. *See id.* ("There are, of course, recognized 'deception' exceptions to this general rule where the opinion either incorporates falsified past or present facts or is so contrary to the true current state of affairs that the purported prediction is an obvious sham."). Importantly, then, normal sales predictions, opinions, or puffing cannot be fraud. *Yung v. Grant Thornton, LLP*, 563 S.W.3d 22, 53 (Ky. 2018)

("While reliance on an opinion or prediction ordinarily is unreasonable as a matter of law, an opinion or prediction may be actionable if it falsely implies that the speaker has facts that form the basis of it or knows of no facts to the contrary."). There must be a false objective premise undergirding or propping an opinion to move the representation into an actionable category. *See Flegles*, 289 S.W.3d at 549 (discussing exceptions: "[A]bsent **misrepresentation of objective data**, 'forward-looking recommendations and opinions are not actionable . . .merely because they are misguided, imprudent or overly optimistic.'" (quoting *In re Salomon Analyst AT&T Litigation*, 350 F.Supp.2d 455, 467 (S.D.N.Y.2004) (citing *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 85 (2nd Cir.1999)))).

Here, for starters, all three advertisements Prewitt points to unambiguously describe the policies as "life insurance" no less than three times and "whole life insurance" at least once. *See* DE 32 at ¶¶ 30, 31, 36. "Whole Life Insurance" is defined as "[l]ife insurance that covers an insured for life, during which the insured pays fixed premiums, *accumulates savings from an invested portion of the premiums*, and receives a guaranteed benefit upon death, to be paid to a named beneficiary."[10] "Nest egg," as relevant here, is defined as "a fund of money accumulated as a reserve[.]"[11] Surely, a policy that "accumulates savings from an invested portion of the premiums" is inclusive of "a fund of money accumulated as a reserve." There is little if any conceptual room between these ideas. To then call the use of these terms in the same advertisement materially false representations ignores their plain meaning.

And, where is the falsity in the ads or materials? The policies are in the record. DE 30-1 contains all three. Each policy has a defined and objectively obvious cash or surrender value. Each

---

[10] *Life Insurance*, Black's Law Dictionary (11th ed. 2019) (emphasis added).
[11] *Nest egg*, merriam-webster.com, https://www.merriam-webster.com/dictionary/nest%20egg (last visited Feb. 8, 2021).

policy reflects the fixed premium, doubled benefit at majority, and cash value over time. *See, e.g.,* DE 30-1 at 12, 21, 52. The policies tabulate the cash value over time. Objectively, the cash value does build over time, just as the ads promise. Is the result a "nest egg"? Surely that gauzy metaphor carries subjective freight. It is not false or misleading to say that, as premiums come in, the diverted cash value portion accrues, forms a reserve, that is a growing resource for the policyholder and beneficiary. Other contributory language—that the product is a "head start" or provides "ready cash" is a) sales talk that b) is not objectively false.

The Court sees important analytical cracks in Prewitt's overall theory. Whatever led Prewitt to buy policy 1 (in 2007), she [12] had that policy in hand long before buying policy 2 and policy 3. Thus, she knew (that is, had the exact documents showing) the precise manner by which the Grow-Up Plan operated. Perhaps the rates and specific terms changed slightly through the years, but the structure across the policies is the same. Thus, if Prewitt knew what the Grow-Up Plan signified after the first round and she ventured forth, the Court has difficulty seeing plausible reliance for the later purchases.

Even more importantly, Prewitt's case hinges on the comparative wisdom of buying whole life insurance in this scenario. Though a series of paternalistic arguments, Prewitt contends that no right-thinking Kentuckian could view these purchases as rational or prudent ways to spend money. The arguments completely ignore that Prewitt's premiums bought more than the cash value component of the policy—they bought whole life insurance, at a flat rate, with permanent effect and automatic coverage doubling or other additional insurance access. Maybe Dave Ramsey or the

---

[12] Prewitt concedes that she received the issued policies. DE 32 at 23 (referencing "her receipt of the policy documents"). Policy 1 issued March 15, 2007.  DE 30-1 at 2. Policy 2 issued September 16, 2013. *See id.* at 18. Policy 3 issued September 12, 2016. *See id.* at 49. The record does not demonstrate precise receipt timing, but given that Prewitt admits that she "has," DE 23 at ¶ 6, the policies and confirms receipt, she surely received each one a short mailing interval after issuance.

investment intelligentsia would not recommend this vehicle to consumers.[13] Maybe Prewitt now does not view these advantages as a head start or an investment in a grandchild's future. Formulating debate over comparative investment wisdom is a far cry from a plausible allegation that the ads were false, fraudulent, or misleading.[14] The products here might be inferior, on evaluation of a full range of financial options. That does not make their marketing fraudulent. Gerber Life did not describe them inaccurately, did not make future or predictive claims with a specious factual footing, and did not mislead the audience receiving its marketing materials.

The record shows no misstatements or misrepresentations of fact by Gerber Life. The advertisements repeatedly call the product whole life insurance. The ads accurately claim a cash value benefit that grows over time. Nothing in the ads promises anything at all concerning the scope, growth range, or course of the "nest egg," other than, accurately, accrual over time. This is not, like the *Flegles* examples, a company promising dividends when it knew it could not pay or a company promising to list a stock when it knew it would not do so. *See* 289 S.W.3d at 549. Here, Gerber Life stuck to sales talk, told it like it really was, and engaged in no fraud. This sinks Claim 2.

### d.  Fraud by Omission

Prewitt further claims that she has "adequately alleged that Defendant committed fraud by omission in her Amended Complaint." DE 32 at 14. A plain reading of the Amended Complaint

---

[13] In fact, the Amended Complaint includes numerous excerpts from the investment intelligentsia, dated before Prewitt bought policies 2 and 3, describing Gerber's products. *See* DE 23 at ¶¶ 8, 38.

[14] It interests the Court that Prewitt did not talk about the results under policy 1 or policy 2. Under policy 1, after 20 years, the cash value would exceed the premiums paid ($1529.60/$1335.20); under policy 2, after 20 years, the cash value and paid premiums are near equivalents ($748.85/$774.40). *See* DE 30-1 at 12, 21. This weakens the force of Prewitt's overall arguments about policy operation. And, again, Prewitt ignores the other things bought with a whole life premium.

reveals no such claim. Prewitt argues in her brief that Claim 1 is clearly a negligence claim. DE 32 at 6. She also titles her second claim "Fraud in the Inducement" and specifically tracks her allegations to the elements for the claim. DE 23 at ¶¶ 109–15. "Fraud by omission is not the same, at law, as fraud by misrepresentation, and has substantially different elements." *Republic*, 683 F.3d at 254. Although the Amended Complaint references certain omissions at various places in the pleading (*e.g.*, heading I.C, II.B, ¶¶ 15, 17, 21, 40), the pleaded Claim is not one of fraud by omission.

Prewitt may not "amend [her] complaint in an opposition brief or ask the court to consider *new* allegations . . . not contained in the complaint." *Bates v. Green Farms Condo Ass'n*, 958 F.3d 470, 483–84 (6th Cir. 2020). "If a complaint fails to state a claim even under the liberal requirements of the federal rules, the plaintiff cannot cure the deficiency by inserting the missing allegations in a document that is not either a complaint or an amendment to a complaint." *Id.* (quoting *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993)). Accordingly, the Court rejects Prewitt's attempt to amend the complaint and inject new allegations with a response brief.

Even if the Court were to weigh Prewitt's fraud by omission argument at the 12(b)(6) stage, the pleading would yet fail. According to Prewitt, "Defendant failed to disclose, *inter alia*, the true nature of its 'nest eggs' and further failed to disclose that what it offered was quantifiably inferior to nearly every other investment opportunity out there, including putting cash directly into consumers' piggy banks and/or under their mattresses." DE 32 at 16. As previously discussed, Gerber Life's advertisements never failed to tell customers that it was selling whole life insurance, and it did not inaccurately or misleadingly describe policy content or operation. Prewitt had immediate access to the policy, upon purchase, with a full right to rescind. She has continued to buy and hold the policies over many years. Furthermore, Plaintiff's Amended Complaint never

18

sources a duty on Gerber Life to disclose to possible customers alternative options for their use of their money. It would be rare to require a market participant to make a sales pitch for its competitors. The Court rejects Plaintiff's attempt, via injection of a late amendment, to salt the bland complaint after it has already reached the table.

IV.    **CONCLUSION**

In conclusion, Prewitt's Amended Complaint does not pass the 12(b)(6) standard. Accordingly, the Court **GRANTS** DE 27. The Amended Complaint is dismissed, in full, with prejudice. The Court will issue a separate Judgment.

This the 17th day of February, 2021.

**Signed By:**

**_Robert E. Wier_**

**United States District Judge**